IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | : | Civil Action No. 4:15-00675 |
| | : | |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| INFLECTION ENERGY, LLC, | : | |
| U.S. WELL SERVICES LLC and | : | |
| U.S WELL SERVICES INC., | : | |
| | : | |
| Defendant/Third Party Plaintiff | : | |
| v. | : | |
| | : | |
| HYPERION SAFETY SERVICES, LLC, | : | |
| | : | |
| Third Party Defendant. | : | |

**MEMORANDUM**
August 22, 2016

Pending before this Court is a motion for partial summary judgment filed by

Defendant Inflection Energy, LLC (hereinafter "Inflection") and a motion to

dismiss/motion to strike filed by Defendant U.S. Well Services, LLC (hereinafter

"U.S. Well"). In its motion for summary judgment, Inflection seeks summary

judgment on its cross-claim for contractual defense and indemnity against U.S.

Well together with the dismissal of U.S. Well's crossclaim for contractual

indemnification against Inflection. U.S. Well's motion to dismiss seeks to dismiss

Inflection's cross-claim against U.S. Well, which requests a declaratory judgment,

1

together with a motion to strike, which seeks to strike Inflection's second amended answer, affirmative defenses, and cross-claim.

The contract between Inflection and U.S. Well (hereinafter "the Master Service Agreement") contains a choice of law provision which requires application of Colorado law.  Both Inflection and U.S. Well set forth legal arguments pursuant to Colorado law; this Court will, therefore, assume that neither party objects to its application in the matters at hand.[1]

These matters are now ripe for disposition.  In accordance with the following reasoning, Inflection's motion for partial summary judgment is granted and U.S. Well's motion to strike is denied. Inflection's declaratory judgment cross-claim is also dismissed as moot and U.S. Well's motion to dismiss is consequently granted.

# I. BACKGROUND AND PROCEDURAL HISTORY

The instant lawsuit arises from personal injuries suffered by Plaintiff, Michael Williams, while performing work for Trinity Medical Management Services LLC and/or Hyperion Safety Services, LLC (hereinafter "Hyperion"), on a well site owned and operated by Inflection in Lycoming County, Pennsylvania. Plaintiff initiated the present action on January 5, 2015, by filing a complaint against Inflection, U.S. Well, and U.S. Well Services, Inc. in the Eastern District of

---

[1] See Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."). The court in Gay goes on to say that Pennsylvania courts have adopted section 187 of the Restatement (Second) Conflict of Laws, which provides that contractual choice of law provisions will be enforced except in certain circumstances. Gay, 511 F.3d at 389.

Louisiana.  Shortly thereafter, the action was transferred to this Court.  Both Inflection and U.S. Well filed answers to Plaintiff's complaint. U.S. Well's answer, however, included a crossclaim against Inflection for common law contribution and indemnification, as well as contractual indemnification. In response, Inflection filed a motion to dismiss U.S. Well's cross-claim[2] and an amended answer[3] in which it asserted a breach of contract cross-claim against U.S. Well.

In its motion to dismiss, Inflection sought to dismiss U.S. Well's contractual indemnification count on the basis that, pursuant to the Master Service Agreement, Inflection was not required to indemnify U.S. Well for personal injury claims initiated by U.S. Well's own subcontractors. This Court denied Inflection's motion because, at the time it was filed, it was unclear which party, U.S. Well or Inflection, had actually contracted with Hyperion, Plaintiff's employer.

Three days after this Court's Order was docketed, U.S. Well filed a third-party complaint against Hyperion seeking indemnification pursuant to a written contract it had entered into with U.S. Well.[4] Inflection then filed the instant motion for partial summary judgment seeking indemnification from U.S. Well pursuant to the Master Service Agreement.[5] Inflection also filed a second amended answer which added a cross-claim against U.S. Well, seeking contribution and indemnity

---

[2] ECF No. 28.
[3] ECF No. 27.
[4] ECF No. 43.
[5] ECF No. 56.

and seeking a declaratory action pursuant to 28 U.S.C. § 2201.[6] In response, U.S

Well filed the instant motion to dismiss and motion to strike.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

Inflection contends that it is entitled to judgment in its favor on both its

cross-claim for contractual defense and indemnity as well as on U.S. Well's cross-

claim for contractual defense and indemnity. It argues that it is indisputable that

Plaintiff was employed by Hyperion and that U.S. Well hired Hyperion as a

subcontractor. It contends that there is no genuine issue of material fact regarding

the Master Service Agreement, and that, pursuant to the plain language of the

same, U.S. Well must defend and indemnify Inflection.

## A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[7] A fact is "material" where it "might affect the outcome of the suit

under the governing law."[8]  A dispute is "genuine" where "the evidence is such

that a reasonable jury," giving credence to the evidence favoring the nonmovant

and making all inferences in the nonmovant's favor, "could return a verdict for the

nonmoving party."[9]

---

[6] ECF No. 67.
[7] Fed. R. Civ. P. 56(a).
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[9] *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[10] The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[11]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would

---

[10] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).
[11] *Id*. at 331.
[12] *Anderson*, 477 U.S. at 250.
[13] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

contradict the facts identified by the movant.'"[14] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[15]

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.[16] Credibility determinations are the province of the factfinder, not the district court.[17] Although the Court may consider any materials in the record, it need only consider those materials cited.[18]

## B. Discussion

As stated above, Inflection argues that it is entitled to judgment in its favor on both its cross-claim for contractual defense and indemnity and on U.S. Well's cross-claim for contractual defense and indemnity based on the plain language of the Master Service Agreement. In opposing Inflection's motion, U.S. Well advances two arguments. I will discuss each in turn.

---

[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[15] Fed. R. Civ. P. 56(e)(2).
[16] *Anderson*, 477 U.S. at 249.
[17] *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[18] Fed. R. Civ. P. 56(c)(3).

**1. Inflection's motion is premature in that the parties have yet to conduct adequate discovery to determine the parties' obligations.**

U.S. Well argues that it, as well as Inflection, have indemnification obligations under the Master Service Agreement and, therefore, discovery is needed to determine the liability of the parties, if any. It further contends that, according to the Plaintiff's complaint, Inflection was negligent in failing to maintain the premises in safe condition by removing snow and ice. Therefore, discovery is needed to discover facts establishing negligence to determine liability.

Colorado law generally allows contracting parties to enter into indemnity agreements; they are "subject to the same rules of construction that govern" general contract interpretation.[19] "Hence [an indemnity agreement] should be enforced according to the plain and generally accepted meaning of its language and interpreted in its entirety to give effect to all of its provisions so that none are rendered meaningless."[20] They should generally be construed to effectuate rather than defeat the parties' intentions.[21] Any ambiguities in the language of the provision will be resolved against the party seeking indemnity.[22]

---

[19] *See Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App. 2002); *see also East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005) ("It is axiomatic that a contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract.  To this end, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used.").

[20] *Id.*

[21] *See Williams v. White Mountain Const. Co., Inc.*, 749 P.2d 423, 426 (Colo. 1988) (citing *Gardner Bros. & Glenn Constr. Co. v. American Surety Co.*, 37 P.2d 384, 386 (Colo. 1934).

[22] *Williams*, 749 P.2d at 426.

The contract at issue, the Master Service Agreement, contains reciprocal indemnification provisions.  It states, in relevant part:

> 5.2 [U.S. Well] shall release Company Group from any liability for, and shall protect, Defend and indemnify Company Group from and against all Losses, *without limit and without regard to the cause or causes thereof or the negligence of any party or parties,* arising in connection herewith in favor of Contractor Group and Contractor Group's employees on account of bodily injury, death, or damage to property. . . .
>
> 5.3 [Inflection] shall release Contractor Group from any liability for, and shall protect, Defend and indemnify Contractor Group from and against all Losses, *without limit and without regard to the cause or causes thereof or the negligence of any party or parties,* arising in connection herewith in favor of Company Group or Company Group's employees on account of bodily injury, death or damage to property. . . .[23]

In Section 5.1(a), "Company Group" is defined as "[Inflection], its parent, affiliate, and subsidiary entities, its and their joint venturers, joint interest owners, partners, co-owners, co-lessees, contractors and subcontractor of any tier (other than Contractor and its subcontrators) and the respective directors, officers, agents, representatives, employees and invitees of all the foregoing."[24] In Section 5.1(b), "Contractor Group" is defined as "[U.S. Well], [U.S. Well]'s parent, affiliate, and subsidiary entities, and subcontractors of any tier, and each of their respective directors, officers, agents, representatives, employees and invitees."[25]

---

[23] ECF No. 58-1 at 4 (emphasis added).
[24] *Id.* at 3.
[25] *Id.* at 4.

In the case at bar, it is undisputed that Plaintiff was an employee of Hyperion. After considering the agreement between U.S. Well and Hyperion,[26] together with U.S. Well's answer to Inflection's first amended answer[27] and U.S. Well's third-party complaint against Hyperion[28] (in which U.S. Well seeks contribution and indemnification from Hyperion pursuant to the agreement between U.S. Well and Hyperion), it is now clear to this Court that Hyperion was a subcontractor of U.S. Well.

According to the plain language of the Master Service Agreement, U.S. Well agreed to indemnify Inflection for and defend from "all losses" arising from bodily injury, death, or damage to the property of the Contractor Group or its employees.[29] "Contractor group" includes "subcontractors of any tier."[30] As Hyperion is U.S. Well's subcontractor, U.S. Well has agreed to indemnify Inflection for the losses arising from the bodily injuries of Hyperion's employees.

Not only did U.S. Well contract to indemnify Inflection for these losses, it agreed to do so "without regard to the cause or causes thereof or the negligence of any party or parties."[31] An indemnification provision that purports to render the indemnitor liable for the indemnitee's conduct, while lawful, must contain "clear

---

[26] ECF No 58-1 at 31.
[27] ECF No. 32 at 7.4 ("It is admitted that U.S. Well Services, LLC contracted with Plaintiff's employer, Hyperion Safety Services, LLC to perform a portion of that work.").
[28] ECF No. 43.
[29] ECF No. 58-1 at 5.2.
[30] *Id.* at 5.1(b).
[31] *Id.* at 5.2.

and unequivocal language to that effect."[32] This means that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties."[33] While agreements that indemnify for the negligent conduct of an indemnitee are generally strictly construed, broad, all-inclusive language may nevertheless meet the rule of strict construction when it is sufficient to express the parties' intent in a commercial context.[34] This is because courts have found that there is parity in bargaining power between sophisticated corporations bargaining at arms-length.[35]

In the matter at hand, neither party advances any argument that the indemnification provision at hand is unclear. Indeed, it is not. The contract unambiguously states that all losses arising from bodily injury, death, or damage to property of an employee or subcontractor will be indemnified "without regard to the cause . . . or negligence of any party . . . "[36] Thus, U.S. Well's contention that this motion is premature is without merit. In accordance with the plain language of the contract, U.S. Well must indemnify Inflection without regard to any negligence on its part.

---

[32] *Williams*, 749 P.2d at 426.
[33] *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283-84 (Colo. 1992) (quoting *U.S. v. Seckinger*, 397 U.S. 203, 211 (1970)).
[34] *Public Service Co.*, 829 P.2d at 1284-85.
[35] *Id.*
[36] ECF No. 58-1 at 5.2.

**2. Colorado's Anti-Indemnity Statute precludes applicability of the indemnity provisions in the Master Service Agreement**

U.S. Well maintains that the indemnification provisions of the Master Service Agreement are void and unenforceable under Colorado's Anti-Indemnity Statute. In response, Inflection argues that the Anti-Indemnity Statute is inapplicable to the Master Service Agreement because it applies only to construction contracts.

Generally, 13 C.R.S. §13-21-111.5 provides that, "[i]n an action brought as a result of a death or injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury . . ."[37] Section 13-21-111.5 allows for the admissibility of evidence of negligence or fault of a person not a party to the action in order to limit the liability of the defendant by the degree or percentage of the non-party's fault.[38]

In April 2007, Colorado enacted a statute amending §13-21-111.5 by adding subsection (6), also referred to as the Anti-Indemnity Statute.[39] Subsection (6) generally voids provisions in construction contracts that require a party to "indemnify, insure, or defend in litigation another person against liability for damage arising out of death or bodily injury to persons or damage to property

---

[37] 13 C.R.S. § 13-21-111.5(1).
[38] 13 C.R.S. § 13-21-111.5(3)(a).
[39] *See* Brian G. Eberle, *S.B. 07-087 and the Enforceability of Indemnification Provisions in Colorado Construction Contracts*, 36-SEP COLO. LAW. 59 (2007).

caused by the negligence or fault of the indemnitee or any third party under the control or supervision of the indemnitee."[40]

The Anti-Indemnity Statute was enacted in response to a problematic trend in construction contracts.[41] Construction businesses were using broad indemnity provision to shift financial responsibility for their negligence to others, which, in turn, made it more difficult for general contractors to obtain liability insurance.[42] The Anti-Indemnity Statute, therefore, prevents a party to a construction agreement from transferring responsibility of its own negligence to the other party.[43] Furthermore, in order to prevent parties from evading the effects of subsection (6) through choice-of-law provisions applying the law of other states which allow this practice, the Anti-Indemnity Statute provides that Colorado law applies "to every construction agreement affecting improvements to real property within the state of Colorado."[44] The construction agreements to which subsection (6) applies include

> Contract[s], subcontract[s], or agreement[s] for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.[45]

---

[40] 13 C.R.S. § 13-21-111.5(6)(b).
[41] Eberle, *supra* note 39 at 60.
[42] *Id.* at 59.
[43] *Id.* at 60.
[44] 13 C.R.S. § 13-21-111.5(6)(g).
[45] 13 C.R.S. § 13-21-111.5(6)(e)(I).

This Court agrees with Inflection that the Anti-Indemnity Statute does not apply to the matter at hand. Inflection and U.S. Well entered into a contract for the operation of a drill site in Pennsylvania and not a construction agreement as defined by the statute. While § 13-21-111.5 applies generally to all civil litigation, subsection 6 applies only to indemnification clauses in contracts "for materials or labor for the construction . . . of any building, building site, structure, [etc.]."[46] In fact, at least one court refused to apply the Colorado Ant-Indemnification Statute to indemnification clauses in Master Service Agreements, even in construction cases, because the clause was not in the construction agreement itself.[47]

Curiously, other states have anti-indemnification statutes that could apply to the situation at hand. The Texas Oilfield Anti-Indemnification Act applies to contractual agreements relating to oil wells and oilfields.[48] Similarly, the Louisiana Oilfield Indemnity Act applies to contracts "pertaining to wells for oil, gas or water."[49] Wisconsin also has an anti-indemnification statute which provides that indemnification clauses in agreements "pertaining to any well for oil, gas or water, or mine" which indemnify for losses due to death or bodily injury are void when the negligence is that of the indemnitee.[50]  Colorado, however, does not have an

---

[46] 13 C.R.S. § 13-21-111.5(6)(g).
[47] *Higby Crane Service, LLC v. National Helium, LLC*, 2015 WL 5692078 (D. Kansas September 28, 2015) ("Moreover, because the [Colorado] Anti–Indemnification Statute specifically applies to construction agreements, and not to MSA's, it is not applicable.").
[48] Tex. Civ. Prac. & Rem. Code Ann. § 127.001-007.
[49] La. Rev. Stat. Ann. § 9:2780(B).
[50] Wyo. Stat. Ann. § 30-1-131.

anti-indemnification statute pertaining to oil and gas agreements. As the parties have agreed to apply Colorado law to the Master Service Agreement at hand, the indemnification provision does not violate Colorado public policy.[51]

## III. U.S. WELL'S MOTION TO DISMISS/MOTION TO STRIKE

### A. Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[52] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[53] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[54]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[55] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by

---

[51] Even if Colorado law was not applied to the matter at hand, there is no anti-indemnification statute under Pennsylvania law that would be pertinent to the Master Service Agreement in this case.

[52] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[53] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[54] *Neitzke*, 490 U.S. at 327.

[55] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

"signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[56] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[57]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[58] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[60] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[61]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[62] No matter

---

[56] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[57] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[58] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).
[59] *Iqbal*, 556 U.S. at 678.
[60] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).
[61] *Twombly*, 550 U.S. at 556.
[62] *Iqbal*, 556 U.S. at 679.

the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[63]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[64] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[65] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[66] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[67]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[68]

---

[63] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[64] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[65] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[66] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[67] *Iqbal*, 556 U.S. at 678.

[68] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

**B. Discussion**

**1. Motion to Strike**

U.S. Well seeks to strike Inflection's second amended answer[69] for failing to obtain leave of court. It argues that Inflection failed to adhere to Federal Rule of Civil Procedure 15(a), which provides that amendments must be obtained by leave of court or written consent of the adverse party.[70] Inflection argues that leave of court was not required in this case because this Court's Case Management Order allowed for amendments to pleadings prior to March 15, 2016.

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading within twenty-one days of serving it, by obtaining the opposing party's written consent to do so, or by leave of court.[71] Federal Rule of Civil Procedure 16 further requires a court to issue a scheduling order that limits the time to join other parties, complete discovery, file motions, and amend pleadings.[72]

This Court's Case Management Order provides a schedule with the time limits required by Rule 16.[73] The second listed date establishes a deadline of March 15, 2016 as "Defendants final date for amending pleadings."[74] This final date to

---

[69] Inflection filed its first answer on April 29, 2015 (ECF 23), which contained no cross-claims against U.S. Well, its amended answer on September 2, 2015 (ECF No. 41), and its second amended answer on March 9, 2016 (ECF No. 67).
[70] Fed. R. Civ. P. 15(a).
[71] *Id.*
[72] Fed. R. Civ. P. 16(b)(3)(A).
[73] ECF No 55.
[74] *Id.* at 3.

amend the pleadings, however, does not give the parties permission to disregard the requirements of Rule 15(a). Instead, the final date in the Case Management Order sets a limit on the time that a party can amend its pleading by written consent of the opposing party. That is to say, the Case Management Order does not anticipatorily grant a party leave to amend its pleadings. The party must still seek leave of court.

Be that as it may, the Court will not strike Inflection's second amended answer. The Court acknowledges that the Case Management Order does not clearly or adequately explain the parameters of the time limit with regard to Rule 15(a) and it notes Inflection's reasonable, albeit incorrect, interpretation. Furthermore, had Inflection sought leave of court, it would have been granted as Rule 15(a) also requires that "court[s] should freely give leave when justice so requires."[75] Inflection filed its second amended answer after U.S. Well filed its third-party complaint against Hyperion. I would have consequently granted Inflection leave to amend its answer in light of the changed circumstances.

## 2. Motion to Dismiss

Alternatively, U.S. Well seeks to dismiss Inflection's third cross-claim which seeks a declaratory judgment declaring the parties' rights and obligations under the Master Service Agreement. U.S. Well argues that the case is not yet ripe

---

[75] Fed. R. Civ. P. 15(a).

for disposition because "Inflection has not demonstrated the necessary immediacy and reality to warrant the issuance of a declaratory judgment."[76] Inflection, on the other hand, maintains that the matter is ripe for judicial determination.

In light of this Court's ruling on Inflection's motion for partial summary judgment above, the Court need not rule on the merits of U.S. Well's ripeness argument. Inflection seeks a declaratory judgment declaring the rights and obligations of Inflection and U.S. Well under the Master Service Agreement. As the rights and obligations have been set forth above, the Court will grant U.S. Well's motion and will dismiss Inflection's cross-claim seeking a declaratory judgment as moot.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Inflection's motion for partial summary judgment is granted, U.S. Well's motion to strike is denied, and U.S. Well's motion to dismiss is granted, and Inflection's cross-claim seeking a declaratory judgment dismissed as moot.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[76] ECF No. 72 at 4.

19