# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WILLIAMS, | No. 4:15-CV-00675 |
| Plaintiff, | (Judge Brann) |
| v. | |
| INFLECTION ENERGY, LLC, U.S. WELL SERVICES, LLC, AND U.S. WELL SERVICES, INC., | |
| Defendants and Third-Party Plaintiff, | |
| v. | |
| HYPERION SAFETY SERVICES, LLC, | |
| Third-Party Defendant. | |

## MEMORANDUM OPINION

### APRIL 7, 2020

## I.  BACKGROUND

As has been previously noted by this Court, many of the relevant material facts in this matter are not in dispute. U.S. Well Services, LLC ("Well Services") and Hyperion Safety Services, LLC ("Hyperion") entered into a master services agreement ("MSA") under which, as relevant here, Hyperion agreed to indemnify Well Services for injuries incurred by Hyperion employees on Well Services' sites.

Hyperion employee and Plaintiff Michael Williams injured himself on such a well in Lycoming County, Pennsylvania, and alleges various personal injury claims against Well Services.[1] Well Services filed a third-party complaint against Hyperion seeking, *inter alia*, indemnification for Williams's injuries pursuant to the MSA.[2] Hyperion denied that it had any obligation to indemnify Well Services.[3] This Court subsequently granted Well Services' motion for partial summary judgment and concluded that "Hyperion is contractually obligated to release, defend, and indemnify Well Services against Plaintiff Williams's claims 'up to the dollar limits that apply equally to both parties.'"[4]

Hyperion has now filed a motion for partial summary judgment in which it argues that its indemnification duty is capped at zero dollars.[5] Hyperion argues that this is so because its insurance policy "extends coverage only to those parties whom Hyperion is required to cover under a written contract" and, at the time of Williams' accident, Hyperion and Well Services had not yet executed the MSA—meaning that there was no contractual requirement to provide insurance.[6] Specifically, Hyperion contends that Williams' accident occurred on January 5, 2014, and Hyperion and

---

[1] Doc. 1.
[2] Doc. 43.
[3] Doc. 50.
[4] Docs. 126, 127.
[5] Doc. 136.
[6] *Id.* at 8-9.

Well Services did not sign the MSA until January 8, 2014, and February 3, 2014, respectively.[7] Hyperion further argues that insurance cannot apply retroactively, as that would be contrary to Texas' fortuity doctrine.[8] This matter has been fully briefed[9] and, for the following reasons, Hyperion's motion will be denied.

## II. DISCUSSION

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[11] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[12] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[13]

Well Services does not dispute that, for Williams' accident to be covered under Hyperion's insurance policy, Hyperion and Well Services must have entered

---

[7] *Id.*

[8] *Id.* at 10-11.

[9] Docs. 140, 141.

[10] Fed. R. Civ. P. 56(a).

[11] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[12] Fed. R. Civ. P. 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

into a contract prior to January 5, 2014 that required Hyperion to provide insurance coverage for Well Services.[14] Thus, this Court must determine whether there is any genuine dispute as to whether the parties entered the MSA on or before January 5, 2014.

Under the laws of the State of Texas,[15] "[a]n unambiguous contract will be enforced as written."[16] Thus, where a contract contains a "provision . . . definitely fixing its effective date," that date will govern.[17] Although Hyperion is correct that the MSA was not *signed* until after January 5, 2014, the MSA unambiguously provides an earlier start date: "This MASTER SERVICE AGREEMENT . . . is made and entered into as of December 18, 2013 by and between" Hyperion and Well Services.[18] The MSA further provides that insurance must be carried by the parties "[a]t any and all times during the term of this Contract."[19] The unambiguous terms of the MSA therefore govern; the parties "entered into" the MSA on December 13,

---

[14] *See* Doc. 140. *See also* Doc. 137-2 at 40 (Hyperion's insurance policy providing "if required by written contract, any person, firm or organization is included as an Additional Insured but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by the named Insured and only to the extent required under said written contract").

[15] The MSA provides that it shall be governed by the laws of Texas. (Doc. 137-1 at 10).

[16] *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

[17] *Holbrook v. Southland Life Ins. Co.*, 129 S.W.2d 448, 450 (Tex. Civ. App. 1939). *See also Jim Maddox Properties, LLC v. WEM Equity Capital Investments, Ltd.*, 446 S.W.3d 126, 133 (Tex. App. 2014) (noting that terms of the contract controlled where "the parties agreed under the express terms of the Note that the Note was effective as of January 1, 2011").

[18] Doc. 137-1 at 1.

[19] *Id.* at 7.

4

2013—prior to Williams' accident. Pursuant to the terms of the MSA and Hyperion's insurance contract, Hyperion's insurance covered Well Services at the time of the accident, and Hyperion's motion for partial summary judgment must be denied.

Moreover, even if the terms of the MSA were not explicit, there is—at a minimum—a genuine issue of material fact as to whether the parties manifested a clear intent to enter into, and be bound by, the MSA prior to the dates that it was signed. As the Supreme Court of Texas has repeatedly observed:

> Texas law recognizes that a contract need not be signed to be "executed" unless the parties explicitly require signatures as a condition of mutual assent. If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract.[20]

Thus, in *Mid-Continent Casualty Company v. Global Enercom Management, Inc.*,[21] the Supreme Court of Texas examined whether a work-site accident was covered by an insurance policy even though "[t]he subcontracts for which the insurance policies allegedly provided coverage were signed after the work had begun."[22] There, the Defendant subcontracted with a company named All States to perform repair work on a cell tower.[23] "A provision of Global's subcontract with

---

[20] *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015).

[21] 323 S.W.3d 151 (Tex. 2010).

[22] *Id.* at 152.

[23] *Id.*

5

All States required All States to indemnify Global for 'all acts and omissions of its employees, on the site where the Work is being performed and for all acts and omissions of its subcontractors, agents and vendors.'"[24] Although All States signed the contract and promptly began work on the project, "Global did not immediately sign the contract."[25] An accident then occurred on the worksite that killed three of All States' employees; "[t]he day after the incident, Global signed the subcontract."[26]

The Supreme Court of Texas noted that the contract had not been signed by all parties prior to the accident, but determined that the contract did not expressly require signatures, and therefore analyzed the behavior of the parties to determine whether they had entered into the contract prior to the accident.[27] The court observed that All States had signed the contract but, more importantly, "beg[an] performance on the work contract," which indicated its assent to the terms of the contract.[28] Similarly, "there was mutual assent to All States's work by Global . . . [and] a representative of Global was at the job site while All States's employees installed the pulley system."[29] Consequently, the court determined that "[a]lthough not signed

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 153.

[27] *Id.* at 157-58.

[28] *Id.* at 157.

[29] *Id.*

6

by Global until after the accident, the subcontract with All States was nonetheless 'executed' before the accident" through the parties' actions.[30]

Here, the MSA does not expressly require that the parties sign the contract as a condition of mutual assent.[31] Moreover, on January 5, 2014, Williams was on site at one of Well Services' wells, performing work "as a safety rep for . . . Hyperion" in accordance with the requirements of the MSA.[32] As in *Mid-Continent*, Hyperion expressed assent to the contract by beginning performance of the contract, and Well Services expressed mutual assent by permitting Hyperion's employee on site to perform that work. Thus, by January 5, 2014 at the latest, the parties expressed mutual assent to the contract through their actions, and the contract was binding upon the parties at that time.

Accordingly, the evidence collectively demonstrates that the MSA was in effect on January 5, 2014. Hyperion is therefore required to defend and indemnify Well Services up to the limits of either Hyperion's or Well Services' insurance policy,[33] and Hyperion's motion for partial summary judgment must be denied.[34]

---

[30] *Id.*

[31] *See* Doc. 137-1.

[32] Doc. 1 at 2; *see also* Doc. 137-4 at 1.

[33] Hyperion's insurance policy provides coverage up to $1,000,000. (Doc. 137-2 at 2). It is not clear what limits are contained in Well Services' insurance policy and, as this Court previously noted, the lesser amount should govern. (Doc. 126 at 4-6).

[34] Hyperion also argues that it is entitled to partial summary judgment because retroactive application of the MSA and insurance coverage would violate Texas' fortuity doctrine, which bars the provision of retroactive insurance coverage to a known accident. (Doc. 136 at 10-11).

## III. CONCLUSION

For the foregoing reasons, the Court will deny Hyperion's motion for partial summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

However, as discussed above, the MSA was executed—and Hyperion's insurance policy was triggered—prior to January 5, 2014, and the fortuity doctrine is inapplicable.