## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL WILLIAMS,

        Plaintiff,

    v.

INFLECTION ENERGY, LLC; U.S.
WELL SERVICES, LLC; and U.S.
WELL SERVICES, INC.,

        Defendants and Third-
        Party Plaintiffs,

    v.

HYPERION SAFETY SERVICES,
LLC,

        Third-Party Defendant and
        Third-Party Plaintiff,

    v.

NAVIGATORS INSURANCE
COMPANY,

        Third-Party Defendant.

No. 4:15-CV-00675

(Chief Judge Brann)

## MEMORANDUM OPINION

### AUGUST 9, 2022

Following a workplace slip-and-fall incident in January 2014, Plaintiff

Michael Williams sued both his employer (Hyperion Safety Services, LLC) and

the company that owned the worksite (U.S. Well Services, LLC). This suit

prompted a series of derivative insurance disputes, with Hyperion and Well Services seeking to pass their potential liabilities onto others by invoking preexisting defense and indemnification commitments. Bizarrely, these maneuvers have gone full circle, ensnaring Williams himself.

See, Williams settled the dispute with Hyperion and then agreed to indemnify it and its insurers against all claims arising out of the January 2014 incident. But his claims against Well Services remain. Well Services had an indemnification agreement with Hyperion, who in turn had an indemnification agreement with Third-Party Defendant Navigators Insurance Company. Navigators was brought into this case to assume responsibility for defending and indemnifying Well Services against Williams's original claims. Navigators then filed a third-party complaint against Williams, arguing that per the settlement agreement with Hyperion—i.e., Navigators's insured—Williams must defend and indemnify Navigators. In effect, Navigators argues that Williams is ultimately responsible for defending and indemnifying Well Services for the claims Williams himself brought.

As illogical as it may seem, that is what these independent but interrelated indemnification agreements require. Navigators here seeks partial summary judgment on its claims against Williams, and for the reasons provided below, this motion is granted.

## I.     BACKGROUND

On January 5, 2014, Williams was employed by Hyperion and assigned to work at a Well Services site in Lycoming County, Pennsylvania.[1] While at this site, Williams slipped and fell, injuring his right ankle.[2]

A year later, Williams sued Hyperion in the Eastern District of Louisiana, seeking damages under the Jones Act and general maritime law.[3] That same day in the same court, Williams filed a personal injury suit against Well Services.[4] Then, with the consent of the parties, the second suit was transferred to this Court.[5]

In the seven years since, this straightforward slip-and-fall case has morphed into a knotty, multi-faceted insurance dispute—a product of several independent but cascading defense and indemnification agreements. Indeed, the derivative insurance disputes have taken on lives of their own, spawning this matter involving the Plaintiff and a third-party defendant brought into the case by a separate third-party defendant. Given this complexity, to properly understand where we are, we must start by reviewing how we got here.

---

[1]  Doc. 1 ¶ 4.1.

[2]  *Id.*

[3]  *See Williams v. Trinity Medical Management, L.L.C.*, 331 F. Supp. 3d 557 (E.D. La. 2018), *aff'd*, 769 F. App'x 179 (5th Cir. 2019).

[4]  *See* Doc. 1. Williams also named Inflection Energy, LLC as a defendant. Because Inflection Energy is no longer a party to this case, *see* Doc. 97, or an entity relevant to the instant motion, this memorandum opinion omits any further reference to Inflection Energy.

[5]  Doc. 16.

First, in September 2015, Well Services filed a third-party complaint, seeking defense and indemnification from Hyperion under a Master Services Agreement.[6] In its answer, Hyperion denied that it had an obligation to indemnify Well Services for Williams's claims stemming from the January 2014 incident.[7] Well Services then moved for partial summary judgment,[8] which this Court granted, thereby requiring Hyperion to release, defend, and indemnify Well Services against Williams's claims.[9]

Second, in February 2016, Hyperion and Williams settled their initial dispute in the Eastern District of Louisiana.[10] As part of the Settlement Agreement, Williams committed to "defend, indemnify and hold harmless the Released Parties of and from any loss or damage of any nature whatsoever . . . that arise out of, or are connected in any way, with the accident, injuries and for illness allegedly sustained by Michael Williams [on] or about January 5, 2014."[11] The Settlement Agreement defines "Responsible Parties" as Hyperion as well as its "owners, members, agents, contractors, servants, employees, officers, directors, managers, shareholders, *insurers*, underwriters[,] . . . assigns, successors, customers, partners,

---

[6]   Doc. 43.
[7]   Doc. 50.
[8]   Doc. 116.
[9]   Doc. 126; Doc. 127.
[10]   Doc. 182-2, Ex. B (Settlement Agreement).
[11]   *Id*. at 5.

4

and affiliated, parent and subsidiary companies."[12] Further, the Settlement Agreement provides that the "release of liability" extends to "any other claims against the parties so released, related to the January 5, 2014 incident and injury described above, . . . whether under any policy of insurance, [and] whether sounding in tort, contract, equity or admiralty."[13]

Third, in September 2020, Hyperion filed a third-party complaint against its insurer, Navigator, seeking defense and indemnification against the claims brought by Well Services—that is, the claims obligating Hyperion to defend and indemnify Well Services for the underlying claims brought by Williams.[14] Put differently, in this game of insurance musical chairs, Hyperion points to Navigators as the party standing, thereby obligating Navigators to assume responsibility for whatever costs Well Services accrues defending against, and resulting from, Williams's original claims.[15] Navigators moved to dismiss Hyperion's third-party complaint,[16] but that motion was denied.[17]

Finally, in October 2021, after the Court denied its motion to dismiss, Navigators filed cross-claims against Williams for declaratory judgment and

---

[12]   *Id*. at 2 (emphasis added). The Settlement Agreement also references Trinity Medical Management, L.L.C. *Id*. Because Trinity is not a party to this case, or an entity relevant to the instant motion, this memorandum opinion omits any further reference to Trinity.

[13]   *Id*. at 2–3.

[14]   Doc. 149 ¶ 11 ("Navigators issued a policy of marine general liability insurance (the 'Policy'), with effective dates July 10, 2013 to July 10, 2014, to Hyperion, the named insured.").

[15]   *Id*.

[16]   Doc. 159.

[17]   Doc. 171; Doc. 172.

breach of contract.[18] According to Navigators, under Williams and Hyperion's Settlement Agreement, Williams is obligated to defend and indemnify Hyperion's insurers against all claims arising out of or in any way related to the January 2014 incident.[19] Navigators asserts that because it is one of Hyperion's insurers, Williams must defend and indemnify it against the claims by Well Services, and his failure to do so constitutes a breach of contract.[20]

Navigators moved for partial summary judgment on its declaratory judgment and breach of contract cross-claims against Williams.[21] That motion has been fully briefed and is now ripe for disposition.[22]

## II.    LAW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[24] A defendant

---

[18]    Doc. 174.
[19]    *Id*.
[20]    *Id*. ¶¶ 18–27.
[21]    Doc. 181.
[22]    Doc. 182; Doc. 183; Doc. 184; Doc. 185; Doc. 186; Doc. 187; Doc. 188.
[23]    Fed. R. Civ. P. 56(a).
[24]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

"meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[25] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[26]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[27] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[28] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[29] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[30]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[31] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[32] Moreover, "[i]f a party fails to properly support an assertion

---

[25] *Clark*, 9 F.3d at 326.

[26] *Id*.

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[29] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

[30] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988)).

[31] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[32] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[33] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[34]

## III.   ANALYSIS

Despite the case's convoluted procedural history, the issue Navigators presents in its motion for partial summary judgment is discrete: whether the Settlement Agreement obligates Williams to defend and indemnify Navigators against the claims in Hyperion's third-party complaint. The Court finds that it does.

Under Pennsylvania law, a court considering the construction and enforceability of an indemnity contract "must strictly construe the scope of [the contract] against the party seeking indemnification."[35] That said, the language of the contract ultimately controls: "If the indemnity clause is clear and unambiguous, then the intentions of the parties should be ascertained primarily by looking to the language used in the agreement"; courts look to the circumstances under which the contract was signed "[o]nly where the court finds ambiguity."[36]

---

[33]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).

[34]   Fed. R. Civ. P. 56(c)(3).

[35]   *Jacobs Construction, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (citation omitted).

[36]   *Id.*

In the Settlement Agreement, Williams assumed a duty to defend and indemnify the "Released Parties" from all claims that "arise out of, or are connected in any way, with the accident, injuries and for illness allegedly sustain by Michael Williams [on] or about January 5, 2014."[37] The Settlement Agreement defines "Released Parties" as Hyperion as well as its "insurers."[38] Here, there is no dispute that Navigators qualifies as one of Hyperion's insurers—indeed, the genesis of this dispute is Hyperion's claim that under Navigators's Marine General Liability insurance agreement with Hyperion, Navigators is obligated to defend and indemnify Hyperion against the third-party complaint filed by Well Services.[39] Accordingly, the only issue is whether Hyperion's claims against Navigators "arise out of" or "are connected in any way [with]" Williams's accident on January 5, 2014.[40]

---

[37]  Doc. 182-2, Ex. B (Settlement Agreement) at 5.

[38]  *Id*. at 2.

[39]  Doc. 149 ¶¶ 11–13; *see also* Doc. 184 at 6 (Williams acknowledging "it is true that Navigators, as an insurer of Hyperion, would be encompassed by the defined term Released Party").

[40]  Separately, Well Services filed an opposition to Navigators's motion for partial summary judgment, arguing that the motion should be denied because Navigators "is trying to avoid its legal obligations owed by ignoring its duty to defend and indemnify Well Services in this present action." Doc. 185 at 3. In effect, Well Services asks the Court to deny Navigators's motion concerning the scope of the indemnity provision contained in the Settlement Agreement between Williams and Hyperion based on Navigators's alleged failure to satisfy its obligations under a separate agreement—the Master Services Agreement between Well Services and Hyperion. *Id*. at 4. But that's not the way this works. Navigators's obligations to Well Services under the Master Services Agreement has no bearing on the Court's interpretation of the Settlement Agreement and therefore no bearing on the merits of the instant motion.

Williams argues that "[t]he claims asserted by Hyperion against Navigators arise not out of the accident, but out of Navigators' breach of its own contractual responsibilities to defend Hyperion."[41] According to Williams, although "[t]he Settlement Agreement could have provided that Williams had to defend and indemnify the Released Parties from any and all declaratory judgment and/or breach of contract claims arising out of insurance coverage the parties had in place," it does not; instead, "the defense and indemnification language within the Settlement Agreement is limited to defense and indemnification of claims arising out of the slip and fall incident."[42] But this argument ignores both the broad language of the Settlement Agreement and the nature of Hyperion's claims against Navigators.

First, the indemnification language in the Settlement Agreement is exceedingly broad. Per the Agreement, Williams agreed to "defend, indemnify and hold harmless the Released Parties"—which, as explained, includes Navigators— "of and from any loss or damages of any nature whatsoever . . . that arise out of, or are connected in any way, with the accident, injuries and for illness allegedly sustained by Michael Williams [on] or about January 5, 2014."[43] And for good measure, the Settlement Agreement further released Hyperion and its insurers,

---

[41]   Doc. 184 at 7 (emphasis omitted).
[42]   *Id.*
[43]   Doc. 182-2, Ex. B (Settlement Agreement) at 5.

including Navigators, from "any other claims . . . whether under any policy of insurance, [and] whether sounding torn, contract, equity or admiralty."[44]

When Williams and Hyperion litigated the scope of this defense and indemnification provision in the United States District Court for the Eastern District of Louisiana, the court affirmed its breadth: "[T]he plain meaning of the phrase, 'all . . . liabilities' in this provision is that every type of liability is encompassed, including contractual liability."[45] And the United States Court of Appeals for the Fifth Circuit agreed: "[A]ny and all claims mean[s] any and all claims."[46] Against this backdrop, the Court concurs with Navigators that "[t]he plain language of [the Settlement Agreement] includes contractual indemnity claims brought under any policy of insurance against any of the Released Parties," including Navigators, so long as the claims exhibit some factual nexus with the January 2014 incident.[47]

Second, Hyperion's claims against Navigators—which concern Well Services's claims against Hyperion regarding its obligation to defend and indemnify Well Services for "any damages which may be imposed upon [it] arising from the claimed damages of Plaintiff, Michael Williams"[48]—arise out of the January 2014 incident. As Navigators asserts, the claims against Navigators

---

[44]   *Id.* at 2–3.
[45]   *Williams*, 331 F. Supp. 3d at 580 (E.D. La. 2018).
[46]   *Williams*, 769 F. App'x at 180 (internal quotation marks omitted).
[47]   Doc. 188 at 6.
[48]   Doc. 43 ¶ 1.

"would not exist but for the January 5, 2014 incident," and "a determination of whether the contractual indemnity claim against Navigators is viable will turn on, among other things, the facts of the January 5, 2014 incident and whether liability for Williams's alleged injury falls within the scope of the Navigators insurance policy."[49] Accordingly, the defense and indemnification provision of the Settlement Agreement covers the claims in Hyperion's third-party complaint against Navigators.

## IV.   CONCLUSION

The Court's ruling here flows directly from the clear and unambiguous language of the Settlement Agreement: Williams agreed to protect and indemnify Hyperion's insurers from all claims arising out of or any way related to the January 2014 incident; Navigators is one of Hyperion's insurers and the claims at issue concern the financial responsibility for defending Well Services against Williams's claims based on the injuries he suffered in January 2014; therefore, Williams is obligated to defend and indemnify Navigators for the claims at issue.

That said, the Court recognizes this outcome seems almost comically perverse. As a result of this ruling, Williams may well be obligated to defend and indemnify Well Services for the claims he himself brought. But this simply exemplifies the potential perils of including broad indemnification provisions in

---

[49]   Doc. 188 at 3–4.

settlement agreements. It does not alter the ruling the facts of this case require:

Navigators's motion for partial summary judgment is granted.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge